## HENNESSEY et al. v. CAMPBELL.
### No. 8478.

Court of Civil Appeals of Texas. San Antonio.
Oct. 15, 1930.

Rehearing Denied Nov. 19, 1930.

*Writ of error granted.

H. S. Groesbeeck and R. P. Coon, both of San Antonio, for appellants.

Dodson & Ezell and Hicks, Hicks, Dickson & Lange, all of San Antonio, for appellee.

FLY, C. J.

This suit was instituted by appellee against P. J. Hennessey, J. G. Sullivan, and R. P. Coon, to recover damages alleged to have accrued by reason of certain statements made by them. It is alleged that R. P. Coon and J. G. Sullivan made charges against appellee in certain communications to the Secretary of the Treasury of the United States, and that Hennessey was the author of and responsible for some of the reports made to the Secretary by Sullivan.

The appeal was taken from an order overruling pleas of privilege on the part of Hennessey and Coon to be sued in Bexar county, their alleged residence, as well as the residence of appellee.

Appellee testified that he had a residence in Bexar county, a home in which his wife resided, and which he visited periodically. He voted in Bexar county and filed various suits in which he alleged his residence in Bexar county, and attended political precinct conventions in Bexar county and was sent as a delegate to county conventions. He owned no house in Webb county, but lived in a rented room there. He spent on an average five days of the week in Webb county and only two days of the week in Bexar county. His wife did not reside in Webb county, but lived in their home in Bexar county. He and his wife were not separated, but he lived in Laredo most of the time because he was in the service of the United States government as collector of customs at that city.

Appellee did not deny that his residence was in Bexar county, and firmly believed it was there, because he voted there, and the statute declares that, being a married man, his residence was in Bexar county. Rev. Stats. art. 2958.

The present law as to venue of libel cases was enacted to meet the wrong inflicted upon defendants, especially newspapers and periodicals, by the former statute in permitting suits in such cases to be prosecuted in any county in which the libel was published, that is, made known. It often became very oppressive in requiring parties to answer in counties far remote from their domiciles and in a community selected by the plaintiff, known to be adverse to the defendant in such cases. It was evidently the desire and object of the Legislature to confine the suits to the county of the residence of the plaintiff and the defendant, when it provided that the suit for libel might be begun and prosecuted in the county in which the plaintiff or the defendant resides. Article 1995, subd. 29, Rev. Stats. of 1925. The statute was intended to limit the venue very materially and confine it strictly to the counties of residence of the plaintiff and defendant. What is the proper construction of the word "reside" as used in the statute? Does it intend to convey the idea that the plaintiff may have two or more residences, either of which he may select as the forum in which the case may be tried? To so hold, we think, would defeat, to some extent, the intention of the statute to confine the choice of venue of the suit to narrow limits. Further, we have failed to discover any authority which would permit a plaintiff to have two residences for the purpose of a suit like the present and to have the choice of the counties in which to institute his suit. So far as we have ascertained the doctrine of two counties, either of which would furnish venue, has always been confined to defendants. The decisions of the Supreme Court have extended to plaintiffs the authority to select either of two residences held by a defendant, but no court has given the plaintiff the privilege of making two or more residences and choosing from them the place in which he desires to try his grievances against a defendant. The law in cases of libel confines the venue to the county in which the plaintiff and defendant reside. We know of no authority for reading into the statute something in direct conflict with the undoubted intention of the Legislature to restrict the venue of libel suits. The Commission of Appeals has exhaustively treated the question of residence, as used in libel cases in the statute, and seems to confine the residence of the plaintiff to the county in which he legally resides. While much of the first opinion in the case delivered by Judge Short treats largely of domicile as applied to a citizen in a public position in another state, yet it seems that he intended to confine the operation of the statute to the "legal residence" of the plaintiff, which is confined to one county. Upon the motion for rehearing Judge Speer delivered a terse, direct opinion which seems to settle the matter. He said: "Assuming that a libel suit under our statute is not an ordinary suit or action within the venue statutes, but is a special proceeding, and that the place of suit is jurisdictional in the strictest sense, yet we adhere to our original views that the language of the statute requiring such suit to be brought in the county in which the plaintiff resided at the time of the accrual of the cause of action, or at the time of filing suit, uses the word 'resided,' not in the sense of actual pedal presence, but rather of legal residence, as that term has been used throughout the venue statutes. Our reasons for this holding are sufficiently stated in the original opinion by Presiding Judge Short." Evans v. American Publishing Co.

(Tex. Com. App.) 13 S.W.(2d) 358 and Id. (Com. App.) 16 S.W.(2d) 516.

Judge Speer clearly confines residence, as used in regard. to libel suits, to the "legal residence" of the plaintiff.

■ The question then arises in this case, Which is the legal residence of appellee, Webb county, in which he lives in a rented room and stays in order to perform the duties of a collector of customs, and where he has no home; or in Bexar county, where he votes, where he attends the political conventions of his party, where he has a comfortable home, occupied by his wife from whom he is not separated, and which he claims as his residence? The latter county must be the legal residence of appellee, especially in view of the Evans Case, where it was held that the legal residence of Evans was in Dallas where he had a home, although he lived in Atlanta and Washington, D. C., in performance of his duties as head of the Ku Klux Klan.

The two opinions which were rendered in libel cases, namely, Belo Corp. v. Granberry (Tex. Civ. App.) 9 S.W.(2d) 443, and O'Rourke v. Ft. Worth Star-Telegram (Tex. Civ. App.) 19 S.W.(2d) 136, 138, are easily distinguishable from this case. In the first case the plaintiff was superintendent of a prison farm in Walker county and lived there in a house furnished by the state with his family. Afterwards, being still in the service of the state, he moved to Waller county, and under his agreement with the state he became a resident of Waller county. He owned a farm in Cass county. While in Waller county he was a prison commissioner, and the law required a residence in that county. While residing in Waller county he instituted a suit in Cass county against the Dallas News for libel, claiming his residence in Cass county, instead of Waller county, where he had a home furnished by the state in which he and his family resided, as required by law. The court held that his legal residence was in Waller county, and that the suit could be prosecuted only there or in Dallas county.

In the O'Rourke Case it was shown that the plaintiff was twenty-nine years old, was born in Harris county and lived there until he was appointed secretary of the prison commission and moved to Huntsville, in Walker county, where he was engaged in his duties for two years. He stayed in Huntsville no less than five days each week, but at times visited his parents who had a home in Houston, and spent Saturday and Sunday with them. He voted in Harris county, but had no home in either county. The suit was filed in Harris county, and, from a judgment sustaining a plea of privilege, the appeal was perfected. The Court of Civil Appeals held:

"We think the language of this statute clearly shows that it was not the intention of the Legislature to permit suits of this character to be brought in the county in which the plaintiff had his domicile or home which he had not permanently abandoned when, in order to meet his business requirements, he actually resided in another county. We think all the evidence in this case shows that at the time the alleged libelous publications were made the plaintiff resided in Walker county. He was a single man, had no family, and owned no home, and his business headquarters were in that county. He had a room there, which he controlled, and in which he slept and kept his clothes and personal effects, and he ate at a public boarding house in the town where he had his room and business headquarters. His testimony, as to the nature and extent of the duties of his office, which required him not to leave his headquarters in Walker county without the consent of his employers, shows conclusively that, during the time of his employment as secretary of the prison commission, he lived or resided in Walker county.

"The force of this testimony is not destroyed or weakened by the facts that he regarded Harris county as his home, spent most of his week-ends there, during which time he ate and slept in the home of his parents, and that he retained his citizenship and right to vote in that county and returned to reside there as soon as his service with the prison commission terminated."

The last case bases its decision on the case of Belo Corp. v. Granberry, herein cited. Both cases are based on the law requiring residence in the counties where the plaintiffs were serving the state. The facts in the present case clearly make a distinction from the two cases cited.

The facts in this case show beyond a doubt that appellee had only one residence, and that is in Bexar county. The latter county was his legal residence, and under the libel statute he could only prosecute his suit in the county of his legal residence and not in one where he only temporarily lived.

The judgment is reversed, and it is the order of this court that the venue be changed and the clerk of the district court of Webb county prepare and forward the record and other filed papers in this case to the clerk of the district court, Seventy-Third judicial district, in Bexar county.